CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 15 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ANGELA M. YOUNG, )
)
Plaintiff, ) Civil Action No. 7:17CV00339
)
v. ) **MEMORANDUM OPINION**
)
NANCY A. BERRYHILL, Acting ) By: Hon. Glen E. Conrad
Commissioner of Social Security, ) Senior United States District Judge
)
Defendant. )

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Angela M. Young, was born on March 14, 1969, and eventually completed her high school education. Ms. Young has been employed as a cashier, office clerk, assistant manager/dispatcher, and receptionist. She last worked on a regular and sustained basis in December of 2010, when her and her husband's company went out of business. (Tr. 61). On November 7, 2012, Ms. Young filed applications for disability insurance benefits and

supplemental security income benefits. In filing her current claims, Ms. Young alleged that she became disabled for all forms of substantial gainful employment on June 1, 2012, due to depression, anxiety, fibromyalgia, diverticulosis, and fatigue. (Tr. 331, 365). Ms. Young now maintains that she has remained disabled to the present time. With respect to her application for disability insurance benefits, the record reveals that Ms. Young met the insured status requirements of the Act through the fourth quarter of 2015, but not thereafter. See generally, 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to a period of disability and disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before December 31, 2015.

Ms. Young's applications were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated May 4, 2016, the Law Judge also determined, after applying the five-step sequential evaluation process, that Ms. Young is not disabled. See 20 C.F.R. §§ 404.1520 and 416.920.[1] The Law Judge found that Ms. Young suffers from several severe impairments, including major depressive disorder with melancholic features, anxiety disorder, alcohol dependence, dysthymic disorder, fibromyalgia, thoracolumbar strain, and lumbago, but that none of the conditions satisfy the requirements of a listed impairment. (Tr. 22.) The Law Judge then assessed Ms. Young's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light exertion work with lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking six

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work in the national economy. 20 C.F.R. §§ 404.1520 and 416.920. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

> hours of an eight-hour workday and sitting six hours of an eight-hour workday. She can never climb ladders, ropes, and scaffolds or crawl and can occasionally climb ramps and stairs, kneel, crouch, and stoop/bend. The claimant is [to] avoid more than occasional exposure to vibration and all exposure to hazards. She can only perform simple, easy to learn, job instructions consistent with unskilled work, with no more than occasional interaction with the public and coworkers.

(Tr. 26). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Ms. Young is unable to perform any of her past relevant work. (Tr. 30). However, the Law Judge found that Ms. Young retains sufficient functional capacity to perform other work roles existing in significant number in the national economy. (Tr. 30-31). Accordingly, the Law Judge concluded that Ms. Young is not disabled, and that she is not entitled to benefits under either federal program. See generally 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Young has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

3

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Ms. Young's medical problems and the extent to which they affect her ability to work. Although Ms. Young suffers from a combination of physical and emotional impairments, substantial evidence supports the Law Judge's determination that she retains the residual functional capacity to perform a limited range of light work.

Turning first to the plaintiff's physical impairments, the record reveals that Ms. Young has a history of musculoskeletal complaints. In September of 2012, her primary care physician, Dr. Bonnie Culkin, prescribed Tramadol for back pain. (Tr. 439). Ms. Young continued to complain of muscle pain in May of 2013. (Tr. 545). Dr. Culkin diagnosed Ms. Young with unspecified myalgia and myositis for which she again prescribed Tramadol. (Tr. 547). During a subsequent "well woman exam" on October 28, 2013, Ms. Young continued to complain of back pain but exhibited normal range of motion in her head and neck, as well as in her upper and lower extremities. (Tr. 539-40). Her muscle strength, gait, coordination, and deep tendon reflexes were also normal. (Tr. 540). On June 26, 2014, Ms. Young presented with back pain and exhibited tenderness along the lumbar spine. (Tr. 584-85). However, her straight leg raise test was normal, her deep tendon reflexes were intact, and she exhibited normal motor strength. (Tr. 585). Dr. Culkin added a diagnosis of lumbago and prescribed Soma as needed for muscle spasms. (Tr. 586). That same month, Ms. Young presented to an urgent care facility with complaints of back pain. (Tr. 596). Ms. Young reported that she had injured her lower back while lifting one of her grandchildren. Although Ms. Young appeared to be "uncomfortable," her physical examination revealed "no spinal tenderness," normal motor strength, and "normoactive"

reflexes. (Tr. 598). The examining physician diagnosed her with lumbrosacral radiculitis and prescribed Norco as needed for pain. (Tr. 598).

At the administrative hearing held on January 14, 2016, Ms. Young testified that she experiences radiating pain in her legs and sides. (Tr. 79-80). She estimated that she can sit for approximately thirty to forty-five minutes before needing to stand and move, and that she can only stand for approximately five to ten minutes before "everything hurts" and she becomes "lightheaded." (Tr. 88-89). Plaintiff further testified that she takes a nap once a day, and that the naps last between two and three hours. (Tr. 89). Although plaintiff acknowledged that she occasionally watches her three young grandchildren for several hours at a time, she testified that she usually naps as soon as they leave and that "everything hurts" for several days thereafter. (Tr. 86, 87, 90).

After considering all of the evidence of record, the Law Judge determined that Ms. Young's physical impairments are not so severe as to prevent performance of lighter forms of work activity. In making this determination, the Law Judge found that Ms. Young's allegations of disabling physical limitations are not entirely credible. The Law Judge noted that the plaintiff's treatment records do not support her allegations regarding the need for daily naps, and that the clinical evaluations discussed above include relatively benign objective findings. The Law Judge emphasized that while the medical records reflect consistent complaints of pain, particularly in the plaintiff's back, the findings on examination were generally limited to tenderness and did not reveal signs of more severe abnormalities or defects, such as reduced range of motion, sensory or motor deficits, or positive straight leg raise. (Tr. 28). Accordingly, the Law Judge concluded that while plaintiff has work-related limitations resulting from her musculoskeletal impairments, the clinical findings and other evidence in the record do not fully

support the plaintiff's statements concerning the intensity and persistence of the symptoms she claims to experience.

The Law Judge also declined to accept Dr. Culkin's opinion regarding plaintiff's ability to work. In July of 2015, Dr. Culkin completed a medical source statement of the plaintiff's physical ability to perform work-related activities that is inconsistent with the Law Judge's assessment of plaintiff's physical residual functional capacity. In particular, Dr. Culkin opined that Ms. Young can occasionally lift no more than ten pounds, stand and/or walk for less than two hours in an eight-hour workday, and engage in only limited reaching, pushing, and pulling. (Tr. 590-91).

Upon review of the record, the court believes that the Law Judge reasonably afforded little weight to Dr. Culkin's assessment. While the Law Judge recognized Dr. Culkin as a "long time treating source," he noted that Dr. Culkin is not a specialist in the areas of the plaintiff's impairments, and that she did not identify any objective studies or findings that would support her opinions regarding the plaintiff's functional limitations. (Tr. 29). The Law Judge also emphasized that Dr. Culkin's opinions were inconsistent with those offered by two state agency physicians, as well as the opinion of Dr. William Humphries, who performed a consultative physical evaluation on July 19, 2013. Based on his own clinical findings, which were essentially normal, Dr. Humphries opined that plaintiff can stand and walk up to six hours in an eight-hour day, and lift up to fifty pounds occasionally and twenty pounds frequently.[2] (Tr. 534). Both of the state agency physicians concurred with Dr. Humphries' assessment, emphasizing that Ms.

---

[2] During the physical examination conducted by Dr. Humphries, Ms. Young's back and neck were "nontender to palpation," and she exhibited no significant tenderness in her joints. (Tr. 533). Additionally, her gait, grip strength, muscle strength, and range of motion were within normal limits, and she moved on and off the examination table without difficulty. (Tr. 533-34).

6

Young's medical records simply do not include objective documentation of serious musculoskeletal problems. (Tr. 115, 116, 143, 144).

Having reviewed the record in its entirety, which is notably devoid of significant physical findings and clinical signs, the court concludes that substantial evidence supports the Law Judge's decision to not give controlling weight to Dr. Culkin's opinion. Although the opinions of a treating source are generally entitled to greater weight under the administrative regulations applicable to plaintiff's claims, see 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), the court believes that, in the instant case, the Law Judge properly determined to give greater weight to other medical evidence, including the reports from Dr. Humphries and the state agency physicians. All three physicians observed that the medical record simply does not include objective documentation of serious musculoskeletal problems, and that there is no indication that the plaintiff's fibromyalgia could be expected to render her disabled for all work-related activity. In short, the court believes that the Law Judge reasonably relied on the reports from Dr. Humphries and the state agency physicians in concluding that the plaintiff's physical impairments are not so severe as to prevent performance of lighter forms of work activity.

The record pertaining to Ms. Young's nonexertional impairments presents somewhat more challenging issues. The medical evidence reflects that Ms. Young carries diagnoses of major depression, anxiety, alcohol use disorder, and dysthymic disorder. She has been prescribed medications for depression and anxiety by Dr. Culkin since at least 2010, but she has not sought regular treatment from a mental health professional. On November 20, 2015, Dr. Bruce Sellars, a licensed clinical psychologist, examined Ms. Young at the request of her attorney. (Tr. 604). Dr. Sellars noted that plaintiff exhibited a "flat" affect during the mental status evaluation. (Tr. 605). Ms. Young reported that she has trouble with her memory, particularly in the morning, and

that she has passing thoughts of suicide, "without intent or plans." (Tr. 605). Dr. Sellars administered the Beck Depression Inventory, which yielded a "severe" rating; the Mood Disorder Questionnaire, which was within normal limits; and the Burns Anxiety Inventory, which yielded an "extreme" rating. (Tr. 605). His diagnostic impression was as follows: "likely major depressive disorder, recurrent, moderate to severe, with melancholic features[,] possible alcohol use disorder, mild to moderate." (Tr. 605). Plaintiff's counsel subsequently asked Dr. Sellars to complete an assessment of Ms. Young's mental ability to perform work-related activities. In response, Dr. Sellars indicated that "the questions were more detailed than [he was] willing to provide about her current circumstances and her ability to work," and that he was of the opinion that his earlier report adequately summarized his impressions. (Tr. 651).

On December 22, 2015, Ms. Young was transported by ambulance to Carilion Roanoke Memorial Hospital following a "report of possible overdose of unknown amount of medications and alcohol." (Tr. 619). A CT scan of plaintiff's head revealed no intracranial hemorrhage, mass, or mass effect. (Tr. 621). She was admitted to the intensive care unit and a consult with psychiatry was scheduled for the following day. (Tr. 624). On December 23, 2015, Ms. Young was transferred voluntarily to the psychiatric unit, where she was treated by Dr. Bush Kavuru. (Tr. 627, 641). During the initial mental status evaluation, Ms. Young's affect was "restricted" and she described her mood as "'down.'" (Tr. 631). However, her articulation, speech, concentration, and attention were normal; she reported no significant memory impairments; her thoughts and associations were linear and logical; and she denied suicidal ideation. (Tr. 631). Dr. Kavuru adjusted plaintiff's medications after speaking with her primary care physician. (Tr. 644). Ms. Young tolerated the medications without side effects and "voiced benefit from continued use." (Tr. 644). She also successfully attended group therapy sessions. Ms. Young

was subsequently discharged in stable condition on December 29, 2015. At the time of her discharge, she "endorsed an improvement in mood and sleep," and "denied suicidal or homicidal thoughts, or psychotic symptoms." (Tr. 644). During a follow-up appointment with Dr. Culkin on January 5, 2016, the plaintiff's mood was "euthymic," and her orientation, behavior, speech, and appearance were normal. (Tr. 659). Dr. Culkin noted that one of the medications prescribed by Dr. Kavuru seemed to be helping.

At the administrative hearing, Ms. Young testified that her mind is slower than it used to be and that she sometimes has trouble with her memory. (Tr. 93). When asked by her attorney if she also has difficulty concentrating, Ms. Young responded in the affirmative, explaining that it sometimes takes her a while to answer questions. (Tr. 94). Ms. Young also testified that her anxiety prevents her from being "very social," but that it does not affect her ability or willingness to go out in public. (Tr. 94).

After considering all of the evidence of record, the Law Judge concluded that Ms. Young's affective, anxiety, and substance abuse disorders limit her ability to work but that they do not render her disabled for all forms of substantial gainful employment. (Tr. 27). In evaluating her mental impairments under step three of the sequential process, the Law Judge recognized that Ms. Young has "moderate difficulties" in the areas of "social functioning" and "concentration, persistence, or pace." (Tr. 25). However, the Law Judge found that, despite such difficulties, Ms. Young is nonetheless capable of performing simple, unskilled work involving limited interaction with coworkers and the public. In reaching this decision, the Law Judge reviewed the existing medical records, noting that while the plaintiff reported varying levels of depression to her primary care physician during the period at issue, she did not consistently complain of concentration or memory issues, or seek ongoing treatment by a mental health professional. (Tr. 27). The Law

Judge observed that "[i]t was not until late 2015 that she obtained a psychological evaluation with the assistance of her attorney," and that the examining psychologist "declined to complete a form concerning the claimant's ability to work." (Tr. 27). With respect to plaintiff's hospitalization in December of 2015 following an overdose while intoxicated, the Law Judge noted that Ms. Young "denied it was a suicide attempt and termed it accidental." (Tr. 27). He also emphasized that she was found to be in "a euthymic mood with good eye contact and grooming" during the subsequent follow-up visit with Dr. Culkin. (Tr. 27). The Law Judge ultimately determined that the plaintiff's treatment records indicate that she has "work related limitations stemming from mental impairments, including any compounding effects of intermittent alcohol use, but not to the extent that she would be unable to sustain a typical 40-hour workweek." (Tr. 27).

In making this determination, the Law Judge relied, at least in part, on a consultative psychological evaluation performed by Dr. Marvin Gardner in June of 2013, as well as more recent reports from nonexamining state agency psychologists. Based on his review of Ms. Young's mental health history, as well as his own clinical findings, Dr. Gardner diagnosed plaintiff with alcohol dependence, dysthymic disorder, and anxiety disorder. (Tr. 528). Dr. Gardner assessed Ms. Young's mental capacity for work activity as follows:

> She is able to perform simple and repetitive work activities on a consistent basis with no more than a mild impairment of concentration, persistence, or pace. She is able to perform work activities without special or additional supervision. She is able to complete a normal workday or work week without interruptions resulting from her psychiatric condition. She was capable of accepting all instructions given by this examiner and responding appropriately. She is capable of interacting with supervisors, coworkers and with the general public with no more than moderate impairment of social interaction. She is unlikely to decompensate due to the usual stresses encountered in competitive work while compliant with psychiatric treatment and remaining abstinent from substances.

10

(Tr. 528). The Law Judge found that Dr. Gardner's opinion was "entitled to weight to the extent that it supports the [Law Judge's] findings concerning skill level and a need for some socially based limitations." (Tr. 28).

The state agency psychologists completed two forms regarding plaintiff's mental health: a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form. On the latter form, both psychologists indicated that despite certain moderate limitations in the categories of "sustained concentration and persistence" and "social interaction," Ms. Young is nonetheless capable of understanding and remembering simple instructions and work procedures, attending to simple work tasks for two-hour periods over a normal workday, and interacting with others to complete simple work duties. (Tr. 131, 132, 145, 146). The state agency psychologists noted that Ms. Young had responded well to treatment for depression, that her ability to perform basic activities of daily living remained intact, and that her examination records did not reveal any significant mental status abnormalities. (Tr. 129, 142, 143). Accordingly, they concluded that Ms. Young retains the mental capacity to perform simple tasks despite limitations in concentration, persistence, or pace. (Tr. 128, 131, 142, 146). Based on the court's own review of the record, the court believes that the Law Judge reasonably relied on the reports from Dr. Gardner and the state agency psychologists in concluding that the plaintiff's nonexertional impairments do not prevent performance of simple, unskilled work that involves limited interaction with coworkers and the public. (Tr. 26).

On appeal to this court, Ms. Young, through counsel, makes three arguments in support of her motion for summary judgment. Plaintiff's first argument presents a close question. As reflected above, the Law Judge specifically found that plaintiff's emotional problems result in moderate difficulties in concentration, persistence, or pace. (Tr. 25). Yet, in formulating his

findings regarding plaintiff's residual functional capacity, the Law Judge did not include such deficiencies. Nor did the Law Judge include limitations in concentration, persistence, or pace in the hypothetical questions propounded to the vocational expert at the administrative hearing. Citing a variety of decisions, most notably that of the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), plaintiff argues that the Law Judge did not sufficiently accommodate her moderate difficulties in concentration, persistence, or pace by merely limiting her to simple, unskilled, light work. (Tr. 26). While this court has adopted such reasoning on multiple occasions, see, e.g., Sexton v. Colvin, 21 F. Supp. 3d 639, 642-43 (W.D. Va. 2014), the court does not believe that the evidence in Ms. Young's case supports the application of this rule.

As Ms. Young recognizes in her brief, "Mascio does not stand for the proposition that moderate limitations in concentration, persistence, or pace always translate into a limitation in the [residual functional capacity assessment]." Richards v. Berryhill, No. 7:16CV00246, 2018 U.S. Dist. LEXIS 50535, at *11 (W.D. Va. Mar. 27, 2018); see also Webb v. Berryhill, 2018 U.S. Dist. LEXIS 81742, at *39 (M.D.N.C. May 14, 2018). Rather, the decision underscores the Law Judge's duty to explain how his residual functional capacity findings adequately account for a claimant's work-related limitations. See Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order."). Moreover, "when medical evidence demonstrates that a claimant can engage in simple, routine

12

tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (cited in Mascio, 780 F.3d at 638); see also Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (holding that remand was not required under Mascio where the opinions of two medical professionals "provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to stay on task while performing 'simple one, two-step tasks,' as long as he was 'working in low stress non-production jobs with no public contact'") (emphasis omitted).

In this case, even after recognizing that Ms. Young experiences certain moderate limitations in the area of "sustained concentration and persistence," the state agency psychologists nonetheless opined that she remains capable of performing simple, routine work. Likewise, Dr. Gardner concluded that Ms. Young's emotional impairments should not prevent her from performing simple and repetitive work activities on a consistent basis. The court believes that the Law Judge reasonably relied on these assessments in concluding that, despite having moderate difficulties in concentration, persistence, or pace, Ms. Young retains the capacity to perform "simple, easy to learn, job instructions consistent with unskilled work, with no more than occasional interaction with the public and coworkers." (Tr. 26). The Law Judge found that such restrictions sufficiently accommodate the work-related limitations resulting from plaintiff's nonexertional impairments, including her alleged problems with memory and concentration, and that her limitations do not prevent performance of unskilled work on a sustained basis. (Tr. 27-28). In short, the court is satisfied that the Law Judge provided an adequate explanation of how his residual functional capacity findings fully accounted for Ms. Young's mental impairments

and the limitations resulting therefrom, and that his findings are supported by substantial evidence. Accordingly, remand is not required under Mascio.

Ms. Young's second argument is that the Law Judge failed to "address the opinions rendered by Dr. Sellars." Pl.'s Br. Supp. Mot. Summ. J. 17, Docket No. 17. This argument is without merit. As indicated above, Dr. Sellars evaluated plaintiff at the request of her attorney, noting that the plaintiff was in the process of applying for disability benefits and was in need of a psychological evaluation. (Tr. 604). Dr. Sellars utilized the Beck Depression Inventory and the Burns Anxiety Inventory to assess plaintiff's symptoms. He ultimately diagnosed her with "likely major depressive disorder, recurrent, moderate to severe, with melancholic features." (Tr. 605). A review of the Law Judge's decision reveals that he did not ignore Dr. Sellars' report. Consistent with Dr. Sellars' diagnostic impression, the Law Judge found that the plaintiff suffers from "major depressive disorder with melancholic features," and that this disorder constitutes a "severe" impairment. (Tr. 22) (internal quotation marks omitted). To the extent plaintiff suggests that Dr. Sellars' report supports a finding of disability for all forms of work activity, the court disagrees. The report contains no opinions regarding the effect of Ms. Young's emotional impairments upon her ability to work, and Dr. Sellars expressly declined to supplement the report to include such opinions. Accordingly, the Law Judge did not err in his consideration of Dr. Sellars' report.

Finally, relying on the Fourth Circuit's decision in Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017), Ms. Young contends that the Law Judge's assessment of her testimony and subjective complaints is not supported by substantial evidence. While Ms. Young testified at the administrative hearing that she experiences chronic pain, fatigue, anxiety, and difficulties with memory and concentration, the Law Judge found that the plaintiff's statements regarding the

intensity and limiting effects of these symptoms were not entirely consistent with the clinical findings and other evidence in the record. The Law Judge then provided specific reasons for his decision to not fully credit the plaintiff's statements regarding the severity of her symptoms. Upon review of the record, the court is unable to discern any error in the Law Judge's credibility findings. Unlike Brown, the Law Judge carefully considered plaintiff's medical history along with her own allegations regarding the symptoms of her physical and mental impairments. The court agrees that plaintiff's testimony is somewhat inconsistent with the complaints documented in the treatment records and the objective findings on examination. Thus, the court is satisfied that substantial evidence supports the Law Judge's decision not to fully credit Ms. Young's testimony.

In affirming the Commissioner's final decision, the court does not suggest that Ms. Young is free of all pain, discomfort, and emotional dysfunction. Indeed, the medical record confirms that plaintiff suffers from impairments that can be expected to result in subjective limitations. However, it must again be noted that several medical specialists who have evaluated plaintiff's physical and emotional problems believe that she retains the capacity to perform regular work activity. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant disabled. See Craig, 76 F.3d at 592. It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Ms. Young's claims for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the

15

court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 14th day of June, 2018.

/s/ Ben Cannon
Senior United States District Judge